## P. F. Condon v. Des Moines Mutual Hail Association, Appellant.

**Hail Insurance:** EVIDENCE: VERDICT. In an action on a hail insurance policy plaintiff testified to the acreage of corn and the yield, and stated the amount of damage, while the evidence of defendant's witnesses, based upon measurement of the ground and cribs in which the corn was stored, showed a full yield. *Held*, the jury was justified in accepting plaintiff's estimate of the loss.

**Proof of Loss:** WAIVER OF RIGHT TO: INSTRUCTION. Where plaintiff notifies the insurance company of the loss and it sends an adjuster, who accepts plaintiff's proposition of settlement and promises to report the company's action thereon, and where on renewed demand for settlement the company promises further inspection but fails to make it or notify plaintiff of its acceptance or rejection of his proposition, or to demand proof of loss before maturity of the claim, the company waives its right to require proof of loss.

**Same.** Where the insurance company, before suit, notified plaintiff, whose corn was damaged by hail, to send it an account of the acreage covered by the policy and amount harvested, and the assured replied by giving the amount of the loss, to

which defendant said it would give the matter attention but failed to do so and denied all liability, it waived its right to demand a further account of the amount harvested.

Evidence: DAMAGE TO OTHER CROPS.    In an action on a hail policy one of plaintiff's witnesses on cross examination stated the average yield of his own corn, and on redirect, without objection, that it was injured by hail.    *Held,* not error to permit him to state that it was injured by the same storm which damaged plaintiff's crop.

Damages: OTHER FIELDS.    In estimating the damage to a crop of corn by hail, the jury may consider the yield of other fields of similar kind and quality in the same vicinity.

*Appeal from Webster District Court.*—HON. S. M. WEAVER, Judge.

FRIDAY, APRIL, 10, 1903.

ACTION at law on a hail insurance policy.    Trial to a jury, and verdict and judgment for the plaintiff.    The defendant appeals.—*Affirmed.*

*Carr & Parker* for appellant.

*Healy & Healy* and *M. J. Mitchell* for appellee.

SHERWIN, J.—The jury fixed the plaintiff's damages at $76, and it is strenuously urged that the evidence fails to show any damage.    The plaintiff testified as to the acreage of corn affected by the hailstorm in question, and as to the amount of corn harvested from the same.    As to the first point, it may surely be said that the evidence was conflicting.    The plaintiff was a farmer himself, and had owned the land in question for many years; and, if the jury believed that he was a truthful witness, it was justified in finding that he knew very closely the number of acres of corn he had in that year, even as against the testimony of the defendant's witness, who claimed to have figured out the exact amount of land

VOL. 120 IOWA.—6.

by driving over it and counting the rows of stalks in sight the next spring, and just before the trial. The same observation may be made as to the number of bushels of corn harvested altogether and placed in the crib. The plaintiff, by his own testimony and by that of several of his neighboring farmers, showed that his growing corn was materially injured by hail on the 6th day of July, and that when the crop was matured it yielded only about thirty-six bushels per acre, instead of forty-five or fifty—the estimated yield if it had not been injured—while by an exact measurement of the cribs after the corn was gone, and a mathematical computation of the number of cubic feet of corn in each one, it was urged that the plaintiff's crop amounted to fifty-seven bushels per acre, notwithstanding the hail. We are inclined to think that the defendant proved too much. At least, the jury seems to have taken the farmer's knowledge of his bushels, as well as of his acres, in preference to the figures of the defendant's witnesses, based partly upon their conclusions as to the fullness of the cribs, and other matters of which they had no knowledge. If we were sitting as jurors, we might be a little more coldblooded than the jury was, but we are not inclined to disturb their verdict.

Complaint is made of the first and fifth paragraphs of the court's instructions. They both relate to the question of waiver, and will be considered together. In the first it 2. PROOF OF LOSS: was said that if the plaintiff notified the de-
waiver of: in-
struction. fendant of his loss, and in response thereto it sent its adjuster to make a personal inspection thereof and settlement therefor, and he settled for the oats and denied any loss on the corn, but took plaintiff's proposition of settlement for the claimed loss, and promised to report to him the action of the defendant thereon, and that "thereafter, upon further demand by plaintiff, the defendant promised to send its adjuster again for further inspection and adjustment, but failed to do so, or to notify the plain-

tiff of its acceptance or rejection of his proposition, and that plaintiff, relying upon said promise, and pending settlement, failed to deliver an account of the crop harvested, and that the defendant at no time before the claim matured, on December 1st, asked or demanded that such an account be rendered, the defendant will be held to have waived its right to such an account." This instruction clearly covers the familiar doctrine of waiver, and its correctness as an abstract statement of the law is not seriously questioned. *Bloom v. Insurance Co.*, 94 Iowa, 359; *Dyer v. Des Moines Ins. Co.*, 103 Iowa, 524; *Soorholtz v. Farmers' M. E. Ins. Co.*, 109 Iowa, 522.

But it is said that the instruction had no facts in the record to support it. This is not correct, however, as we read the record. On the contrary, we think that the testimony offered by the defendant as to its acts in sending its adjuster to the plaintiff, and as to his statements to the plaintiff when there, justified the instruction. The last of December the defendant wrote the plaintiff a letter, asking the number of acres of corn covered by its policy, and the number of bushels of corn husked therefrom. This letter was after the plaintiff had written several letters to the defendant, urging a settlement and the sending of the inspector as promised. The plaintiff answered the defendant's letter as follows: "W. S. Hazard, Sec.—Dear Sir: In reply to your letter of Dec. 31, I would say that I have not received your letter in which you say you sent blanks to estimate my corn nor did not expect such blanks. Perhaps you had better 'jog' your memory a little bit and see if you are not mistaken about sending them. Now Mr. Hazard if I am not mistaken my offer for settlement on corn at first was two dollars per acre, when you first came out to see me but since I started to harvest it I find that the least I can estimate my loss is ten bushels per acre for thirty-eight acres. As you know you sent your adjuster to settle

3. SAME.

losses before harvested and you promised to send one in your letter of Sept. 17, in thirty days.   I did not get a chance to arbitrate as is required but if you wish to settle with me without trouble I will be reasonable and just. If not I must take some other course.   I will look for an immediate reply, as my loss should be settled before this time."   Answering this letter, the defendant wrote as follows:  "Dear Sir:   Your letter of the 7th inst. to Mr. Hazard has been received, but he is out of the city at present, and will be for a few days.   However as soon as he returns we will refer your letter to him for reply." These two letters closed the correspondence on the matter referred to therein, and the court instructed thereon as follows:   "So, also, if you find that before suit was brought the association asked plaintiff to furnish it an account of the corn crop harvested, and that, in response, plaintiff sent in a writing or letter in which he attempted, in good faith, to comply with such request, and that upon receipt thereof the defendant notified him that it would soon give it attention but failed thereafter to object to said statement or demand a more formal or complete account of the crop, but denied all liability to the plaintiff, then  said defendant will be held to have waived such further account, and cannot now insist upon such alleged failure of plaintiff as a defense to this action."   It may be conceded that the plaintiff did not, in his letter of January 7th, give as full information as the request called for, and that he then had the knowledge requisite to give such information; but he did answer the question as to the acreage of corn and as to his loss, and the whole tenor of his letter indicates that he was expecting the defendant to comply with its promise to send an adjuster to determine such loss.   If the defendant was not satisfied with this attempted compliance with its request, it should have so stated, but it made no objection thereto either in its answer of Januray 10th or later.   Under the circumstances,

we think the instruction was properly given, *Green v. In surance Co.*, 84 Iowa, 135; *Dee v. Ins. Co.*, 104 Iowa, 167.

There was no prejudicial error in permitting the witness Theur to testify on redirect examination that his corn was damaged by the same storm. On his cross-ex-4. EVIDENCE: damage to other crops. amination by the defendant he was asked the average yield per acre of his own corn, and on redirect stated without objection that it was injured by hail.

The tenth instruction permitted the jury to consider "the yield of other fields of similar kind and quality in 5. DAMAGES: other fields. that neighborhood," in estimating the depre-. ciation of .yield suffered by the plaintiff. This was correct. *Barry v. Farmers' Mutual Ins. Co.*, 110 Iowa, 433.

We see no reversible error in the record, and the judgment is AFFIRMED.