## 22653. KNIGHTS OF THE KU KLUX KLAN INCORPORATED *v.* FIDELITY AND DEPOSIT COMPANY OF MARYLAND.

DECIDED MAY 3, 1933. REHEARING DENIED MAY 27, 1933.

14

*Morgan Belser, Paul S. Etheridge & Sons,* for plaintiff.
*Little, Powell, Reid & Goldstein,* for defendant.

SUTTON, J. (After stating the foregoing facts.)

The first contention of the plaintiff is that the negotiations with the surety were for a settlement of the claim, and that they constituted a waiver of the contractual limitation contained in the bond sued on, and that the surety was thereby estopped from urging the same in the present action. This limitation was "that any suit or action to recover against the surety on account of loss hereunder shall be brought before the expiration of twelve months from the discovery of the loss." Where in a fidelity bond there is a stipulation that suit must be brought within a specified time after the discovery of the loss under the bond, the stipulation, if reasonable, is binding upon the obligee therein, and such suit must be brought within the time designated. *Third National Bank* v. *American Bonding Co.,* 145 *Ga.* 126 (88 S. E. 585). However, such stipulations in reference to the time in which suit must be brought on a fidelity bond are for the benefit of the company and may be waived by it. *Stanley* v. *Sterling &c. Ins. Co.,* 12 *Ga. App.* 475, 477 (77 S. E. 664). See 7 Cooley's Briefs on Insurance (2d ed.), 6848. This court has approved this rule: "It is a universal rule that, where the insurer, by its acts in negotiating for a settlement, has led the policy holder to believe that he will be paid without suit, the insurer can not take advantage of a provision in the policy which requires the action to be brought in a certain time." *Stanley* v. *Sterling &c. Ins. Co.,* supra. The second headnote in that case is as follows: "Where an insurer, by negotiating for a settlement

or by a promise to pay the amount of the policy, has led the holder to believe that he will be paid without suit, the latter can not take advantage of a provision in the policy requiring action thereon to be brought within a stated time."

The defendant contends that there must be a promise to pay in order to constitute a waiver by a surety of the above stipulation in the bond. It will be noted from the rule laid down and adopted in the *Stanley* case, supra, that such is not the case, but that such negotiations for a settlement as have led the obligee to believe that the claim under the bond would be paid by the surety without a suit will constitute a waiver of such stipulation and the surety can not take advantage thereof in a suit to recover the loss. See *McDaniel* v. *German-American Ins. Co.,* 134 *Ga.* 189 (67 S. E. 668) ; *American Ins. Co.* v. *McVickers,* 135 *Ga.* 118 (68 S. E. 1026) ; *Metropolitan Life Ins. Co.* v. *Caudle,* 122 *Ga.* 608 (2) (50 S. E. 337).

Manifestly, under the facts of this case as shown by the petition, the plaintiff was justified in believing that the surety was not insisting upon its compliance with the above stipulation in the policy, and that a settlement of the claim would be made. The loss was discovered on August 28, 1926. On August 2, 1927, the claim department of the surety stated that if the plaintiff desired prompt payment, it would have to localize its records or furnish conclusive proof of loss, otherwise the matter would have to be adjusted upon the advices of the principal in the bond. On August 9, 1927, the plaintiff wrote to the defendant that it thought the audit furnished by it to the defendant was sufficient, as it was prepared by a competent auditor, and that it did not understand what further proof the claim department could want. On August 30, 1927, after the expiration of the twelve months period, the surety wrote to the plaintiff that it was taking the matter up with the principal in order to get further light on the question. It enclosed therein a letter from its claim department to the effect that the audit of the plaintiff could not be accepted as conclusive proof, that under the terms of the suretyship agreement, the surety had the right to make a personal investigation of the records of the obligee, and that if the plaintiff refused to localize its records, it would be deprived of this right. Thereafter, on October 28, 1927, the defendant wrote to the plaintiff that the claim department was still working on the case. Thereafter, in January 1928, the plaintiff localized its records and

so notified the surety. After much correspondence and negotiations, the surety wrote to the plaintiff that it would check the records, which had been localized by the plaintiff at the request of the defendant, as promptly as possible. So it seems that the defendant requested the plaintiff to perform certain things in connection with the claim after the twelve months period had elapsed, and that there were negotiations looking to a settlement before and after the expiration of that period. In these circumstances, we are of the opinion that the above negotiations between the plaintiff and the defendant constituted a waiver of the stipulation in the bond that suit must be brought thereunder within twelve months from the discovery of the loss, and that the defendant was therefore estopped from urging the same in a suit brought on the bond to recover for a loss thereunder.

■ The defendant contends that the petition shows that the shortage was a civil liability by an employee, and that such a shortage was not covered by the bond. In *Massachusetts Bonding &c. Co.* v. *Raskin,* 43 *Ga. App.* 582 (159 S. E. 778), it was held that a civil liability for shortage by an employee is not covered by a bond covering fraud, dishonesty, larceny, embezzlement, misappropriation, wilful abstraction or wilful misapplication. The defendant bases this contention on the fact that the plaintiff had attached to its petition, as one of a series of letters showing the negotiations between it and the defendant looking toward a settlement, a letter from the principal in the bond to the defendant and sent by the defendant to the plaintiff, to the effect that he did not owe the plaintiff anything, that the plaintiff owed him money and he applied plaintiff's money to the extinguishment of the debt due him. The petition specifically charges that the principal in the bond, while acting as an officer and employee of the plaintiff, "did fraudulently misappropriate, wilfully misapply and embezzle three thousand dollars" belonging to the plaintiff. In these circumstances, we do not think that this contention of the defendant is well taken.

■ The defendant contends that if it was estopped to plead the time limitations, the estoppel was removed when the plaintiff was notified that the defendant denied liability, and that upon receipt of such notice the plaintiff then had a reasonable time within which to commence his action. In support of this it cites Gilbert *v.* Globe & Rutgers Fire Ins. Co., 91 Ore. 59 (174 Pac. 1161, 3 A. L. R.

205). "Although there are many cases holding or assuming that the insurer, by conduct extending beyond the limitation period, inducing the insured to believe that his claim would be settled without suit, was precluded from invoking the contractual limitation against the insured, there are comparatively few which consider the question now under annotation, as to whether such conduct amounts to a definite waiver of the contractual limitation, in the sense that it can not be revived, or a mere suspension thereof. A majority of those that do consider the question take the view that the contractual limitation is definitely waived, and can not be revived by a denial of liability, where the insurer's conduct, which justifies the insured in delaying suit, extends beyond the period fixed by the limitation." Note, 3 A. L. R. 218. The plaintiff contends that the contractual limitation in the bond in this case was waived and can not be revived, and the defendant contends that if such negotiations constituted a waiver, the limitation was just suspended, and upon its refusal to pay and denial of liability the same became revived. In the Oregon case, cited by the defendant, the insurer denied liability before the termination of the period of limitation fixed by the policy. In *Metropolitan Life Ins. Co.* v. *Caudle,* supra, it was held that "Where it appears that the company denied liability eight months before the expiration of the year in which the action was to be brought, and did nothing after its denial of liability to deter the plaintiff from instituting suit, a failure to sue within the contract time is a bar to a recovery." It will be noted, however, that the negotiations in the present case continued long after the expiration of the contractual period of limitation. Moreover, the petition discloses (and on demurrer the allegations of fact must be taken as true) that the surety did not deny liability until July 3, 1930, and this suit was filed on October 3, 1930, which was within a reasonable time after the surety had denied liability. The defendant contends that the letter from its claim department of August 2, 1927, which was within the contractual limitation, shows that liability was denied by the surety on that date. We can not agree to this contention. This letter requested that the plaintiff do one of two things, localize its records or submit conclusive proof of the loss, the claim department of the surety stating that it could not accept the audit furnished by the plaintiff as conclusive proof of the loss. In January, 1928, after further negotiations between the plaintiff and the

defendant, the plaintiff complied with the request of the defendant by localizing its records. Nor do we consider the letter of November 24, 1928, a denial of liability on the part of the defendant. In that letter the surety wrote that it had been informed that the plaintiff was in receivership, and as it also found it was facing a possible liability by reason of having underwritten other matters for the plaintiff, that it did not feel that the plaintiff should request a prompt adjustment of the claim until the final determination of the above matters.

■ It is further urged that as the plaintiff did not comply with the terms of the bond by submitting proof of loss within three months, the suit should have been dismissed on general demurrer. The petition alleges that the plaintiff did not file a proof of loss until January 22, 1927, and the loss occurred on August 28, 1926. Strict compliance with a provision in a fidelity bond requiring proof of loss to be submitted within a specified time may be waived by the surety, and such a waiver may be implied from conduct inconsistent with an intention on the part of the surety to insist upon compliance with the requirements of the bond in this respect, and calculated to lead the insured to believe that they will not be insisted upon. See 33 C. J. § 789, p. 79, and cases cited. On August 28, 1926, the plaintiff notified the defendant that there was a shortage in the accounts of the principal in the bond and that proper proof of loss would be forwarded within the near future. On October 21, 1926, before the expiration of the three months period, the surety wrote to the plaintiff that it had heard nothing further from it in reference to the claim, and that it would like to know whether or not there were any further developments on the claim. On October 23, 1926, the plaintiff wrote the defendant, requesting it to hold the matter in abeyance until such time as it heard from the plaintiff. The defendant did not refuse to comply with this request. Failure to demand the proof of loss within the time prescribed, when coupled with other acts calculated to lead the insured to believe that the proof need not be furnished within the prescribed time, is sufficient to show an implied waiver. See Condon v. Des-Moines Mutual Hail Asso., 120 Iowa, 80 (94 N. W. 477). Under the facts of this case we think that there was an implied waiver of the filing of the proof of loss in this case within the three months period. The conduct of the defendant throughout the negotiations was inconsistent with such a contention as it now makes.

■ It follows from the principles announced above that the court erred in sustaining the demurrer and dismissing the petition.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*